Form G-3

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# _____DIVISION

| In re: | ) | Chapter |
|---|---|---|
| | ) | |
| | ) | No. |
| | ) | |
| Debtor(s) | ) | Judge |

## NOTICE OF MOTION

TO:  See attached list

  PLEASE TAKE NOTICE that on _____, at _____, I will appear before the Honorable _____,, or any judge sitting in that judge's place, **either** in courtroom _____ of the _____ , _____**or** electronically as described below, and present the motion of _____ [to/for] _____, a copy of which is attached.

  **All parties in interest, including the movant, may appear for the presentment of the motion either in person or electronically using Zoom for Government (audio only).**

  **To appear by Zoom using the internet**, go to this link:  https://www.zoomgov.com/. Then enter the meeting ID and passcode.

  **To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666.  Then enter the meeting ID and passcode.

  **Meeting ID and passcode.**  The meeting ID for this hearing is _____, and the passcode is _____.  The meeting ID and passcode can also be found on the judge's page on the court's web site.

  **If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date.  If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

         By: _____

## CERTIFICATE OF SERVICE

I, _____, certify [if an attorney]/declare under penalty of perjury under the laws of the United States of America [if a non-attorney] that I served a copy of this notice and the attached motion on each entity shown on the attached list at the address shown and by the method indicated on the list on _____ , at _____.

_____
[Signature]

**Notice sent by overnight Federal Express:**

Joliet Oncology-Hematology Associates, Ltd.
c/o Barnes & Thornburg, LLC
Attn: Denise Lazar & Erin Pauley
1 N. Wacker Drive, Suite 1400
Chicago, IL 60606

**Notice sent by ECF associated with the case:**

Lester A. Ottenheimer, counsel for Debtor

Deborah Kanner Ebner, Chapter 7 Trustee

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | No. 23-B-04510 |
| Midwest Leasing of Illinois, LLC, | ) | Chapter 7 |
| | ) | Judge Janet S. Baer |
| Debtor. | ) | |
| | ) | |

**MOTION OF CREDITOR PRESENCE FOR AN ORDER (I) REOPENING
CASE AND (II) THAT THE MAY 2, 2023 ARBITRATION AWARD DID
NOT VIOLATE AUTOMATIC STAY OR IN THE ALTERNATIVE, TO
ANNUL THE AUTOMATIC STAY**

Creditor Presence Central and Suburban Hospitals Network f/k/a Presence Hospitals PRV f/k/a Provena Hospitals ("Presence") files this Motion for an order: (i) reopening the Chapter 7 case of Midwest Leasing of Illinois, LLC ("Midwest") for the limited purpose of resolving the automatic stay issue raised by Midwest in state court litigation and (ii) that the May 2, 2023 arbitration award (the "Award") against Midwest did not violate the automatic stay, or in the alternative, to annul the automatic stay. Upon ruling on this Motion, the Court should re-close this bankruptcy case. In support of this Motion, Presence states as follows:

**FACTUAL BACKGROUND**

1. As this Court is aware from Presence's Motion to Dismiss Case for Cause Pursuant to 11 U.S.C. § 707(a) (Dkt. 9), Presence was participating in an arbitration adverse to Midwest and Midwest's majority owner, Dr. Sarode K. Pundaleeka. On March 13, 2023, the arbitrator entered a default order against Midwest and Dr. Pundaleeka and set the matter for a damages prove-up hearing on April 5, 2023. (Dkt. 9 at ¶ 19.) Unbeknownst to Presence, Midwest filed its Chapter 7 bankruptcy petition on April 4, 2023.

2. On April 5, 2023, the arbitrator held the damages prove-up hearing. (*Id.* ¶ 20.) Counsel for Midwest and Dr. Pundaleeka did not appear. (*Id.*) Prior to starting the hearing, the

1

arbitrator emailed Midwest and Dr. Pundaleeka's counsel and asked if they would be appearing. (*Id.*) The arbitrator received no response and the hearing took place. (*Id.*) On April 7, the arbitrator provided the parties the Award, awarding Presence $1,761,846.17 and holding Midwest and Dr. Pundaleeka jointly and severally liable. (*Id.*) On April 10, the arbitrator informed the parties that minor adjustments to the final order would be needed based on Midwest and Dr. Pundaleeka not paying the required arbitrator fees. (*Id.*)

3. On April 13, Presence received Midwest's bankruptcy petition in the mail, and informed the arbitrator of the petition the next day. (*Id.* ¶ 21.) The arbitrator asked whether Dr. Pundaleeka had filed for bankruptcy as well, and Presence told him that Dr. Pundaleeka had not based on the available information. (*Id.*) On May 2, the arbitrator entered a revised Award in the amount of $1,765,346.17 (an increase of $3,500) and again holding Midwest and Dr. Pundaleeka jointly and severally liable. (*Id.*)

4. On May 23, Presence moved to dismiss Midwest's bankruptcy case for cause because, in particular, it was "clearly brought in bad faith," was nothing more than "a mere litigation tactic" to "thwart Presence from collecting on its claim against [Midwest]," and served "no legitimate bankruptcy purpose" because Presence was Midwest's only creditor. (*Id.* ¶¶ 24, 26, 30.) In that motion, Presence flagged for the Court that the arbitrator had entered the initial Award on April 7 and the revised final Award on May 2 after Midwest's bankruptcy petition. (*Id.* ¶¶ 20–21 & n.6.) Midwest initially objected to the motion. (Dkt. 10.)

5. On June 14, the Court held a hearing on Presence's motion to dismiss. There, the bankruptcy trustee stated: "I don't see a basis for this bankruptcy filing." (Ex. A at 2:19–20.) In response, the Court stated: "I thought that might be what you sa[y] because that was my conclusion, too. Mr. Ottenheimer [Midwest's counsel], I don't see what your response could be."

2

(*Id.* 3:6–10.) At no point during the hearing, did the bankruptcy trustee, Midwest's counsel, or the Court express the view that the Award violated the automatic stay.

6. Midwest then withdrew its objection, (Dkt. 15), and the Court, on June 30, granted Presence's motion and dismissed Midwest's bankruptcy case. (Dkt. 16.) At no point during the nearly three months that Midwest's bankruptcy case was pending did Midwest claim that the Award violated the automatic stay.

7. Presence then filed a motion in the Circuit Court of Will County to confirm the Award against Midwest and Dr. Pundaleeka. Midwest and Dr. Pundaleeka filed a petition to vacate the Award. In their petition to vacate, Midwest and Dr. Pundaleeka argued, among other things, that the Award should be vacated because it violated the automatic stay. (*See generally* Ex. B (Midwest's petition); Ex. C (Presence's Opposition).) The Will County circuit court heard argument on the cross motions on September 26, 2023. The Will County circuit court then confirmed the Award as to Dr. Pundaleeka, but entered and continued the motion to confirm/petition to vacate as to Midwest. (Ex. D at ¶¶ 1–2.) The Will County circuit court directed the parties to address the automatic stay issue raised by Midwest with this Court.

## ARGUMENT

8. Good cause exists to reopen this case for the limited purpose of resolving the automatic stay issue raised by Midwest because (1) the Will County circuit court directed the parties to come to this Court to resolve this issue and (2) bankruptcy courts have exclusive jurisdiction to determine the extent and scope of an automatic stay. This Court then should conclude that the Award does not violate the automatic stay, or alternatively, annul the automatic stay because the equities clearly favor Presence.

**I.  Good Cause Exists to Reopen This Case for the Limited Purpose of Resolving the Automatic Stay Issue.**

9. Under 11 U.S.C. § 350(b), a case may be reopened "for other cause." 11 U.S.C. §

350(b). The Bankruptcy Code does not define "other cause," and, as a result, a bankruptcy judge has "broad jurisdiction" to "weigh the equitable factors" in the case in determining whether to reopen the case. *In re Matter of Shondel*, 950 F.2d 1301, 1304 (7th Cir. 1991) (citations and internal quotations omitted). Here, the equities clearly favor reopening the case for the limited purpose of resolving the automatic stay issue raised by Midwest. The Will County circuit court refused to rule on the automatic stay issue raised by Midwest and specifically directed the parties to bring this issue to this Court for resolution. (Ex. D at ¶¶ 1–2.) That was the correct decision because bankruptcy courts have exclusive jurisdiction to determine whether a violation of the automatic stay has taken place and provide any relief, as a result. *See, e.g.*, *E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank*, 236 F.3d 117, 121 (2d Cir. 2001); *Halas v. Platek*, 239 B.R. 784, 792–93 (N.D. Ill. 1999).

**II.     The Award Did Not Violate the Automatic Stay, or Alternatively, the Automatic Stay Should be Annulled.**

10.     The Court should concluded that the Award here did not violate the automatic stay for three reasons. ***First***, Midwest is not entitled to the protection of the automatic stay when it engaged in inequitable conduct by filing a baseless and bad faith bankruptcy petition. Bankruptcy courts are courts of equity. *E.g.*, *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir. 1984). As a result, "[e]quitable defenses, including unclean hands … may be raised by persons accused of violating the automatic stay." *In re Den Beste*, 2012 WL 2061402, at *1 (Bankr. N.D. Cal. June 6, 2012) (collecting cases). Put another way, "[s]uspension of Section 362 automatic stay provisions may be consonant with the purposes of the Bankruptcy Act when equitable considerations weigh heavily in favor of the creditor." *Matthews*, 739 F.2d at 251.

11.     Here, Midwest filed its bankruptcy petition in bad faith in a transparent effort to frustrate Presence's ability to collect on its claim against Midwest. (Ex. A at 2:19–20, 3:5–10,

3:19–4:1; Dkt. 9 at ¶¶ 24–26; Dkt. 16.) That alone is sufficient to deny Midwest the benefit of the automatic stay. *In re Mack*, 2007 WL 1222575, at *4–5 (M.D. Fla. Apr. 24, 2007) (affirming bankruptcy court's decision that debtor not entitled to protection of automatic stay where debtor filed bankruptcy in bad faith); *see also In re Basrah Custom Design*, 600 B.R. 385, 386–87 (Bankr. E.D. Mich. 2019) (denying motion to enforce automatic stay where debtor had unclean hands "in filing and prosecuting this bankruptcy case").

12. **Second**, Midwest was well aware that the Award was entered after its bankruptcy filing, but never claimed in the three months its bankruptcy case was pending that the Award violated the automatic stay. Midwest does not and cannot justify its delay for seeking relief in connection with the stay. *See Sole Survivor Corp. v. Buxbaum*, 2009 WL 210471, at *8 (C.D. Cal. Jan. 22, 2009) (affirming denial of motion alleging violation of automatic stay where debtor did not raise issue until after bankruptcy case was dismissed).

13. **Third**, the bankruptcy trustee and bankruptcy court were aware that the Award was entered after Midwest's bankruptcy filing, but took no action to void the Award because it purportedly violated the automatic stay. This too shows that there was no violation of the stay. *See id.* (citing the bankruptcy trustee's and bankruptcy court's awareness of the post-petition foreclosure and lack of effort to void the foreclosure as another basis to conclude there was no violation of stay).

14. In the alternative to simply holding that the Award did not violate the automatic stay, the Court should annul the automatic stay. Bankruptcy courts such as this one have such authority under 11 U.S.C. § 362(d). *E.g.*, *In re Chellino*, 2022 WL 1180621, at *5 (Bankr. N.D. Ill. Apr. 13, 2022). In fact, this Court has "wide latitude" to grant such relief. *E.g.*, *id.* (citation and internal quotations omitted). "The Bankruptcy Code does not delineate when cause exists to annul the stay, but instead affords discretion to the Court to make that determination on a case-

by-case basis, based on equitable factors." *Id.* (citation and internal quotations); *see also In re Nat'l Env't Waste Corp.*, 129 F.3d 1052, 1055 (9th Cir. 1997). Here, the equitable factors clearly favor Presence for four reasons.

15. **First**, Midwest did not file its bankruptcy petition in good faith. (*See supra* at ¶ 11; *see also* Dkt. 9 at ¶¶ 24–26; Dkt. 16); *see, e.g.*, *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (affirming annulment of automatic stay where "the petition was not filed in good faith").

16. **Second,** Midwest did not raise the automatic stay issue until **after** its bankruptcy petition was dismissed. (*See* Ex. B at 4–5.) It would therefore be inequitable to allow Midwest to void the Award on such an untimely assertion. *See, e.g.*, *In re Chellino*, 2022 WL 1180621, at *5 (concluding equities favored annulling automatic stay where debtor did not raise automatic stay issue "until the very end of the case"); *In re Nat'l Env't Waste Corp.*, 129 F.3d at 1055 (same, where debtor was represented by counsel and waited until after confirmation of Chapter 11 plan to raise automatic stay issue).

17. **Third**, judicial economy favors annulling the automatic stay. At the time of Midwest's April 4, 2023 bankruptcy petition, the parties had completed discovery, and the arbitrator had entered the default order, with the only remaining issue to determine being damages. (*See supra* at ¶ 1.) Determining damages was a straight-forward issue because Presence's claim – unjust enrichment – was premised on errant payments made to Midwest; and, as a result, determining damages was simply adding up all the errant payments. (*See* Dkt. 9 at 11.) Further, the automatic stay did not apply to Dr. Pundaleeka. *See In re Caesars Entm't Operating Co.*, 540 B.R. 637, 643 (Bankr. N.D. Ill. 2015). Despite that, Dr. Pundaleeka did not bother to show up for the damages prove-up hearing, likely recognizing that calculating damages was simple and straight-forward. Given how far along the arbitration was, it would be inefficient to void the Award as to Midwest, have another damages prove-up hearing for Midwest only, and

have the arbitrator reach the same conclusion as he did with respect to Dr. Pundaleeka. *See In re MarketXT Holdings Corp.*, 2009 WL 2957809, at *4–5 (Bankr. S.D.N.Y. July 20, 2009) (annulling the automatic stay in connection with arbitration award where judicial economy favored validation of arbitration proceedings in light of "the significant amount of time, effort, and resources" spent in the arbitration process).

18. **Fourth,** Midwest cannot show that any violation of the automatic stay resulted in Midwest suffering any actual harm. As this Court correctly recognized previously, Presence was Midwest's only creditor. (Ex. A at 3:19–4:1.) Presence took no action to confirm or collect on the Award while Midwest's bankruptcy case was pending. Because of that, Midwest cannot show it suffered from any harm by the arbitrator entering the Award after Midwest's bankruptcy petition, and further supports annulling the automatic stay. *See, e.g.*, *In re Chellino*, 2022 WL 1180621, at *6 (citing the lack of harm as another basis supporting annulling the automatic stay).

## CONCLUSION

19. For above discussed reasons, this Court should enter an order: (i) reopening Midwest's case for the limited purpose of resolving the automatic stay issue raised by Midwest in the state court litigation, and (ii) that May 2, 2023 Award against Midwest did not violate the automatic stay, or in the alternative, annulling the automatic stay. Upon ruling on this Motion, the Court should re-close this bankruptcy case.

Respectfully submitted,

Dated: October 13, 2023

By: /s/ *Christopher J. Letkewicz*
Christopher J. Letkewicz
Sven T. Nylen
Benesch, Friedlander, Coplan & Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
312.212.4949

*Attorneys for Creditor Presence Central and Suburban Hospitals Network*