# Exhibit B

Andrea Lynn Chasteen
Will County Circuit Clerk
Twelfth Judicial Circuit Court
Electronically Filed
2019L 001046
Filed Date: 7/27/2023 11:18 AM
Envelope: 23715279
Clerk: KDO

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
WILL COUNTY, ILLINOIS**

|  |  |  |
|---|---|---|
| PRESENCE CENTRAL AND SUBURBAN HOSPITALS NETWORKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19 L 1046 |
| | ) | |
| MIDWEST LEASING OF ILLINOIS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |
| | ) | |
| MIDWEST LEASING OF ILLINOIS, LLC, | ) | |
| | ) | |
| Third-Party Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOLIET ONCOLOGY-HEMATOLOGY ASSOCIATES, LTD., et al. | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**MIDWEST LEASING OF ILLINOIS, LLC AND SARODE PUNDALEEKA'S
PETITION TO VACATE ARBITRATION AWARD**

Petitioners, Midwest Leasing of Illinois, LLC and Sarode Pundaleeka ("Petitioners"),

move this Court to vacate, pursuant to the Illinois Uniform Arbitration Act, 710 ILCS 5/1 *et*

*seq*., the Arbitrator's Award in American Health Lawyers Association Claim No. 7146. In

support of this Petition, Petitioners by and through their counsel, state as follows:

**BACKGROUND**

1.    On December 9, 2019, Plaintiff, Presence Central and Suburban Hospitals Network

("Presence") filed suit against Midwest Leasing of Illinois, LLC ("Midwest") for unjust

enrichment related to lease payments made under an equipment lease.

2.    On December 30, 2020, Midwest filed a Third-Party Complaint against Joliet

Oncology-Hematology Associates, Ltd. ("JOHA") and certain individuals for contribution alleging that the money at issue passed through Midwest to JOHA and that JOHA was the actual party that was unjustly enriched.

3.      On May 20, 2021, this Court stayed the Third-Party Complaint.

4.      On March 21, 2022, this Court stayed the entirety of the lawsuit realizing that the dispute might be governed by an arbitration clause in a Professional Services Agreement between Presence and JOHA. A copy of the March 21, 2022 order is attached hereto as Exhibit A.

5.      In the March 21, 2022 order, the "Court finds that there is a dispute as to whether the arbitration clause should apply and thus, the case law requires that this matter be referred for dispute resolution pursuant to Section 28 of the Professional Services Agreement."

6.      Presence re-filed the case in arbitration against Midwest and JOHA and Arbitrator Michael Brohman was appointed.

7.      Arbitrator Brohman never determined whether the arbitration clause should apply and merely proceeded as if it did.

8.      Faced with liability to Presence in excess of the assets it had on hand and a multitude of claims coming and going, Midwest determined that it would pursue a bankruptcy and direct its limited assets to those proceedings.

9.      Knowing that its bankruptcy filing was imminent, when asked by Arbitrator Brohman to make a $3,500 deposit for his fees, Midwest declined to make payment.

10.      On March 13, 2023, Arbitrator Brohman entered a default against Midwest and Dr. Sarode Pundaleeka ("Pundaleeka") "for each of their separate failures, without good cause shown, to comply with the additional deposit requirements of Orders 3, 5, and 10," finding Midwest and Pundaleeka liable to Presence without ever allowing them to submit documents in their defense.

A copy of the March 13, 2023 order is attached hereto as Exhibit B.

11.    Instead, liability was based entirely upon their refusal to pay a $3,500 bill of the arbitrator.

12.    On April 4, 2023, Midwest filed for Chapter 7 Bankruptcy. A copy of the bankruptcy filing is attached as Exhibit C.

13.    On April 5, 2023, Arbitrator Brohman held a prove-up hearing to allow Presence to prove its damages as against Midwest and Pundaleeka.

14.    On May 2, 2023, Arbitrator Brohman issued his Final Award (the "Award") against Midwest and Pundaleeka in the amount of $1,765,346.17. A copy of the Award is attached hereto as Exhibit D.

15.    Arbitrator Brohman backdated the Award to April 5, 2023, but did not issue the Award until May 2, 2023. A copy of the transmission email is attached hereto as Exhibit E.

**ARGUMENT**

The Arbitration Act provides, in relevant part:

(a) Upon application of a party, the court shall vacate an award where:
(1) the award was procured by corruption, fraud or other undue means;
(2) there was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party;
(3) the arbitrators exceeded their powers;
(4) the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5, as to prejudice substantially the rights of a party; or
(5) there was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that

it could not or would not be granted by the circuit court is
not ground for vacating or refusing to confirm the award.

710 ILCS 5/12.

The Illinois Supreme Court explained in *Beckman v. Freeman United Coal Mining Co*., 123 Ill. 2d 281, 527 N.E.2d 303 (1988): "Where a party has grounds to believe that proceedings were tainted, that party may seek to vacate awards for the following reasons: (1) fraud, corruption or evident partiality; (2) the arbitrator exceeded his authority; (3**)** gross mistake of law or fact; (4) plain mistake of law if the arbitration agreement requires the decision to be made according to law; or (5) mistake of law if the award shows on its face that the arbitrator intended to decide according to law but mistook or misconstrued it." Nearly every one of these bases were exemplified here in Arbitrator Brohman's erroneous award intended solely to punish Midwest and Pundaleeka for failing to pay his fees.

## I. The Arbitrator exceeded his power where the Award was entered after the automatic stay of Midwest's bankruptcy filing had taken effect.

Section 362 of the Bankruptcy Code automatically stays the "commencement or continuation . . . of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362. "Congress intended the stay to afford Debtor breathing room and to assure creditors of equitable distribution." *In re Soares* 107 F.3d 969, 977 (1st Cir. 1997), citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977). For this reason, "any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994); *Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc*., 157 F.3d 169, 172 (2d Cir. 1998). This includes the issuance of an arbitration award. *In re MarketXT Holdings Corp*., No. 04-12078 (ALG), 2009 Bankr. LEXIS 1897, at *6-7 (Bankr. S.D.N.Y. July 20, 2009); *Savers Fed. Savs. & Loan Ass'n v. McCarthy*

*Constr. Co. (In re Knightsbridge Dev. Co.)*, 884 F.2d 145, 148-49 (4th Cir. 1989). The only exception to this rule is if the bankruptcy court enters a retroactive annulment of the stay. *In re MarketXT Holdings Corp.*, No. 04-12078 (ALG), 2009 Bankr. LEXIS 1897, at *8 (Bankr. S.D.N.Y. July 20, 2009).

Here, Midwest filed its Bankruptcy Petition on April 4, 2023. (Ex. C.) Likely unaware of the petition, Arbitrator Brohman held an evidentiary hearing on April 5, 2023. But Arbitrator Brohman did not immediately issue an award. On April 14, 2023, counsel for Presence forwarded a copy of the Bankruptcy Petition to Arbitrator Brohman and advised him that Midwest Leasing had filed for bankruptcy the day before the evidentiary hearing. Arbitrator Brohman acknowledged receipt of the petition and inquired as to whether Dr. Pundaleeka had filed a petition as well. Ignoring the automatic stay imposed by Section 362 of the Bankruptcy Code, Arbitrator Brohman then issued the Final Award on May 2, 2023 (though he backdated it to April 5, 2023). (Exs. D and E.)

Midwest's bankruptcy would later be dismissed, but absent annulment of the automatic stay, it was still in effect when Arbitrator Brohman issued the Final Award on May 2, 2023.

When Arbitrator Brohman issued the Final Award four weeks after the filing of the Bankruptcy Petition, he knowingly violated the automatic stay and unmistakably exceeded his powers in doing so. The Award cannot legally stand and must be vacated.

## II.    The Arbitrator exceeded his power and refused to hear material evidence when he entered a default order against Midwest and Pundaleeka.

On March 13, 2023, Arbitrator Brohman issued an order finding Midwest and Pundaleeka in default for failure to remit arbitrator fees of $3,500. The sanction of a default judgment in arbitration is near-universally ill-advised because it contravenes the very purpose of arbitration.

Notwithstanding a warning from Petitioners that he would be exceeding his authority, Arbitrator Brohman proceeded nonetheless, ruling as follows:

> "Based on the foregoing, this Arbitrator concludes that he has the power to enter broad sanctions against each of Midwest and Pundaleeka for their individual failures to comply with the additional deposit requirements of Order Nos. 3, 5 and 10. The Arbitrator also concludes that one potential sanction against a party for defying payment orders is the entry of a default order. Accordingly, the Arbitrator hereby issues a default order against each of Midwest and Pundaleeka for each of their separate failures, without good cause shown, to comply with the additional deposit requirements of Orders 3, 5 and 10."

By entering a default judgment against Midwest and Pundaleeka without allowing them to present their defenses to liability, Arbitrator Brohman exceeded his authority as an arbitrator.

Numerous articles explore the topic of how an arbitrator should handle the instance of a non-paying party and all conclude that either (a) one party may pay the full expense of the arbitration with it then otherwise proceeding normally or (b) the arbitrator may terminate the arbitration. Neal Eiseman and Brian Farkas explored the general rules in their article *Stiffing the Arbitrators: The Problem of Nonpayment in Commercial Arbitration*:

> The AAA's Commercial Arbitration Rules, amended and effective October 1, 2013, require the expenses of the arbitrators, witnesses, and the cost of any proof requested by the arbitrator, to be borne equally by the parties, unless they agree otherwise or unless the arbitrator assesses any portion of those expenses against a party in the final award. The specific AAA rule addressing "Arbitrator's Compensation" is silent with respect to who pays what, but unless the parties' arbitration agreement provides otherwise, the AAA bills each party on a 50-50 or pro-rata basis. A different rule, entitled "Remedies for Non-Payment," establishes the protocol when one party fails to pay AAA administrative charges or the arbitrator's compensation. Among other things, it gives the paying party the option of advancing 100% of the administrative charges or arbitrator compensation, and then allows that party to ask the arbitrator to reimburse it <u>via the final award</u>.

> JAMS takes a somewhat different approach. Its rules state the parties are "jointly and severally" liable to pay both the JAMS

arbitration fees and arbitrator compensation. <u>As with the AAA, the apportionment of such fees and compensation is subject to reallocation by the arbitrator in the final award</u>. The CPR, and its Administrated Arbitration Rules, effective July 1, 2013, is similar to the AAA's Commercial Arbitration Rules. Rule 17, "Arbitrator Fees, Expenses and Deposits," requires that the parties be invoiced in equal shares. If the requested payments are not remitted, the arbitration "<u>may be suspended or terminated unless the other party pays the non-paying party's share subject to any award on costs</u>."

Although there are myriad international ADR treaties and providers, the rules governing nonpayment are often similar to their domestic counterparts. The International Chamber of Commerce ("ICC") requires that the fees and expenses of the arbitrators "be payable in equal shares" subject to readjustment at any time during the arbitration. The ICC will dismiss any claim if the parties fail to advance the costs, but "any party shall be free to pay any other party's share" so its case can proceed to the arbitral tribunal. As one attorney has put it, "It does not so much matter who pays, but rather that the fees are in fact paid, in order for any claim to reach the tribunal." <u>The paying party then must await the final award; if it prevails, the tribunal will order reimbursement from the nonpaying party</u>. This places a heavier financial burden on the paying party, effectively reducing one of arbitration's attractions that both parties bear the costs. A non-paying party in ICC arbitrations can use this strategy to delay or halt the arbitration by refusing to pay.

(Emphasis added.) (Citations omitted.)[1]

In fact, the AAA rules are explicit about defaults, going so far as saying, "In no event, however, shall a party be precluded from defending a claim or counterclaim." AAA Commercial Arbitration Rules and Mediation Procedures, R-57. The rules continue, "The arbitrator may not enter a default award as a sanction." R-58. The AAA rules are much more comprehensive than the AHLA rules and should be followed in the absence of an inconsistency.

Regardless, the AHLA rules are generally in accord with the analysis of Eiseman and Farkas. In his default order, Arbitrator Brohman cited AHLA Rules 4.1(a)(3), 4.1(a)(5), 5.3, and

---

[1] *Stiffing the Arbitrators: The Problem of Nonpayment in Commercial Arbitration*, Neal Eiseman and Brian Farkas, Harvard Negotiation Law Review. https://www.hnlr.org/wp-content/uploads/sites/22/HNLR-Eiseman-and-Farkas-.pdf

7.6(c) to establish his authority to enter a default. None of the rules do so and are more aligned with the analysis of Eiseman and Farkas that the arbitrator should suspend the hearing if payments are not made. Rules 4.1(a) and 7.6(c) only stand for the proposition that the arbitrator may sanction parties. They do not address the extent of appropriate sanctions. But – consistent with Eiseman and Farkas – Rule 5.3 directs the arbitrator to suspend proceedings if payments are not made:

> (b) DELAYED PAYMENT. If the Administrator does not receive the required amount, the arbitrator may suspend proceedings pending receipt of these funds. The arbitrator may also sanction a party for non-payment unless the party can prove to the arbitrator's satisfaction that paying the deposit would cause financial hardship. A party may lift the suspension by depositing the amount due from another party, and may request the arbitrator to take this additional payment into account in the award.

AHLA Rule 5.3.

Although the rule discusses sanctions, it does not permit a default judgment. Instead, it is in accord with Eiseman and Farkas who suggest that either the arbitrator suspend the proceedings or another party may pay the unpaid fee and the arbitrator should take this into account in the award. A default simply is not appropriate under any arbitration rules.

The reason defaults are *never* utilized as a sanction in arbitrations is because of the reversible error it creates. Illinois's Uniform Arbitration Act provides that at a hearing, "(t)he parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing." 710 ILCS 5/5(b).

When an arbitrator prohibits a party from presenting evidence, he contravenes the very purpose of arbitration of deciding disputes on their merits. As such, the Act similarly provides that "the court shall vacate an award where:…the arbitrators…refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5, as to prejudice substantially the rights of a party." 710 ILCS 5/12(a)(4) (Emphasis added). *See also*

*Henley v. Economy Fire & Casualty Co.*, 153 Ill. App. 3d 66, 73 (1st Dist. 1987) ("we conclude that the arbitrators' failure to allow plaintiff the opportunity to present her legal response to Economy's motion violated her rights under section 5 of the Act and provided appropriate grounds for vacation of the award pursuant to section 12(a)(4) of the Act"); *Johnson v. Baumgardt*, 216 Ill. App. 3d 550, 560 (2nd Dist. 1991) ("Under section 12(a)(4) of the Act, the trial court did have the authority to vacate the award, based on the arbitrators' refusal to hear evidence material to the controversy").

When Arbitrator Brohman entered the default order on March 13, 2023, he found Midwest and Pundaleeka liable to Presence without permitting the respondents to present evidence. His actions were contrary to section 5 of the Act.

Quite simply, default judgments are contrary to the very purpose of arbitration in that they prevent a party from presenting evidence material to the controversy. The default judgment entered against Midwest and Pundaleeka contravened the terms of the Uniform Arbitration Act by prohibiting them from presenting evidence. Instead, the more appropriate thing for Arbitrator Brohman to have done would have been to allow Presence to pay the full fee and seek proper apportionment of the costs of arbitration in the award or Arbitrator Brohman could have halted or terminated the proceedings.

### III. Arbitrator Brohman's actions in entering a default judgment against Petitioners evinces obvious partiality.

Once it became clear to him that Midwest and Pundaleeka would not be paying his fees and intended, instead, to proceed with a bankruptcy, Arbitrator Brohman determined only to punish Petitioners for failing to pay his fees. Arbitrator Brohman's obsession with payment and his hyperfocus on Midwest and Pundaleeka's failure is evident in his default order. Specifically, he dedicated six paragraphs of the order (paragraphs 3 through 8), comprising a page and a half of

discussion, to Petitioners' failure to pay his fee. By March 13, 2023, it was obvious to Arbitrator Brohman that Midwest and Pundaleeka had no intention of paying his fees and the default order was solely intended to be punitive in nature. By the time he entered the default order, Arbitrator Brohman was noticeably prejudiced against Midwest and Pundaleeka and displaying unmistakable partiality towards Presence. The default order demonstrates his evident partiality.

**IV.    There was no agreement to arbitrate between Presence and Petitioners so as to grant the Arbitrator authority to enter an award against them.**

When Petitioners asked the Court to send this to arbitration, it was – at least initially – for the limited purpose of determining whether the dispute *should* be arbitrated. The Court recognized that the threshold issue for the Arbitrator to determine was where the dispute should be addressed. In the March 21, 2022 order, the "Court finds that there is a dispute as to whether the arbitration clause should apply and thus, the case law requires that this matter be referred for dispute resolution pursuant to Section 28 of the Professional Services Agreement."

As it recognized, case law required the Court to refer the issue of arbitrability to an arbitrator to determine. Arbitrator Brohman never performed this analysis and, instead, merely assumed that he was empowered to – apparently – issue any order he so desired regardless of the presence of an agreement to arbitrate. But neither Midwest nor Pundaleeka were signatories to the Professional Services Agreement. Presence and JOHA were. Absent from any of Arbitrator Brohman's orders was a determination as to the arbitrability of the claims; a threshold issue. Once JOHA was dismissed from the arbitration, there were no respondents that were signatories to the Professional Services Agreement at issue in the case.

Absent a determination by Arbitrator Brohman, as the Court directed, "as to whether the arbitration clause should apply," Arbitrator Brohman lacked jurisdiction over Petitioners. With no jurisdiction, his Award should be vacated.

WHEREFORE, Petitioners, MIDWEST LEASING OF ILLINOIS, LLC, and SARODE PUNDALEEKA, respectfully request that this Court enter a judgment vacating the Arbitration Award entered May 2, 2023, by the American Health Lawyers Association in Claim No. 7146, and for any other such relief that the Court finds necessary or proper under the circumstances.

Respectfully submitted,
Defendant/Third-Party Plaintiff
**MIDWEST LEASING OF ILLINOIS, LLC, and SARODE PUNDALEEKA**

By: _  /s/ Alexander Loftus_
One of Their Attorneys

Alexander Loftus, Esq.
David Eisenberg, Esq.
LOFTUS & EISENBERG, LTD.
161 N. Clark, Suite 1600
Chicago, Illinois 60601
T: 312.899.6625
alex@loftusandeisenberg.com
david@loftusandeisenberg.com

Dated:  July 27, 2023

Exhibit A

# IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
## WILL COUNTY, ILLINOIS

PRESENCE CENTRAL AND ) <br>
SUBURBAN HOSPITALS NETWORK, ) <br>
et al., )

            Plaintiff, )

vs. )    No.: 19 L 1046

MIDWEST LEASING OF ILLINOIS, ) <br>
LLC, et al.. )

          Defendants, )

## ORDER

This matter coming before the Court on Defendant Joliet Oncology-Hematology Associates, Ltd.'s Motion to Dismiss Counts I and II of Plaintiff's Third Amended Complaint and Defendant's Motion to Dismiss Plaintiff's Third Amended Verified Complaint Pursuant to 735 ILCS 5/2-619.1 or in the Alternative Compel Arbitration Pursuant to 710 ILCS 5/2, with the Court having considered the briefs and arguments of counsel, as well as the applicable statutory and case law, it is ORDERED:

Midwest raises that this case should be sent to arbitration, citing the Professional Services Agreement between Presence and JOHA, entered into in 2011, which states as follows:

28. Dispute Resolution. Any dispute between the parties related to this Agreement (except with respect to any disputes pertaining to fair market value determination, which disputes will be resolved in accordance with Section 5 hereof) shall first be considered by the Council, which will be established under the Management Services/Performance Improvement Agreement. If the dispute is not resolved within thirty (30) days thereafter, the senior management of each of the parties will meet to attempt to resolve the dispute. If the dispute is not resolved within thirty (30) days after being referred to the senior management teams, the dispute will be subject to voluntary mediation at the request of either party. If the dispute is not resolved within sixty (60) days of a written request for mediation, the dispute will be subject to binding arbitration in Aurora, Illinois, in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration, and to the extent of the subject matter of the arbitration, shall be binding not only on all parties to this Agreement, but on its Affiliates, to the extent that such Affiliate joins in the arbitration. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof by the Alternative Dispute Resolution Service of the American Health Lawyers Association. The parties shall continue to perform their obligations under this Agreement

during the pendency of any dispute resolution proceeding. Reasonable costs associated with the resolution of the dispute, including attorneys' fees may be awarded to the prevailing party in any arbitration.

Midwest notes that it first became aware of the provision of the PSA over this past summer and thus, has not waived its ability to request arbitration. Presence contends that the two-year lapse since the filing of this case waives the ability to request arbitration. It is correct that the parties have conducted motion practice and discovery during this time period.

Our Third District addressed the effect of binding arbitration in MHR Estate Plan, LLC v. K & G Partnership, 67 N.E.3d 878, 2016 IL App (3d) 150744 (Ill.App. 3 Dist.,2016). In that case, the court denied the initial request for arbitration, noting that the arbitration clause did not apply. The case proceeded for many years and while on appeal, the Third District noted:

> Under the Uniform Arbitration Act (710 ILCS 5/1 et seq. (West 2010)), the parties are bound to arbitrate those issues that they have agreed to arbitrate. Smola v. Greenleaf Orthopedic Associates, S.C., 2012 IL App (2d) 111277, ¶ 16, 367 Ill.Dec. 786, 982 N.E.2d 936. If a dispute is clearly within the arbitration clause, the court should order arbitration. However, if the dispute is clearly not within the clause, then there is no agreement to arbitrate, and the court should deny arbitration. If the scope of the agreement is reasonably in doubt, then the meaning of the arbitration clause should be determined by the arbitrators. State Farm Mutual Automobile Insurance Co. v. Hanover Development Corp., 73 Ill.App.3d 326, 328–29, 29 Ill.Dec. 299, 391 N.E.2d 562 (1979) (citing School District No. 46 v. Del Bianco, 68 Ill.App.2d 145, 154–55, 215 Ill.Dec. 25 (1966)). In Ozdeger v. Altay, 66 Ill.App.7d 629, 631, 23 Ill.Dec. 446, 384 N.E.2d 82 (1978), the First District held that a written contract arbitration clause covering all disputes "arising out of, or relating to" the written contract required arbitration of the related oral contract. On the other hand, in United Cable Television Corp. v. Northwest Illinois Cable Corp., 128 Ill.2d 301, 305, 131 Ill.Dec. 172, 538 N.E.2d 547 (1989), the supreme court found that a dispute between limited and general partners was not a dispute subject to the limited arbitration clause that only applied when the "general partners fail to agree on a matter * * * affecting the general policy of the Company * * * that would, in the judgment of either general partner, materially or adversely affect the business or prospects of the Company." (Internal quotation marks omitted.) In reaching that conclusion, the United Cable court emphasized the limited nature of the arbitration clause, in contrast to the broad "any claim relating to or arising out of" or " any controversy which arises out of" type. (Internal quotation marks omitted.) United Cable Television Corp., 128 Ill.2d at 308, 131 Ill.Dec. 172, 538 N.E.2d 547.

MHR Estate Plan, LLC v. K & G Partnership, 67 N.E.3d 878, 882–83, 2016 IL App (3d) 150744, ¶ 20 (Ill.App. 3 Dist.,2016). See also Salsitz v. Kreiss, 761 N.E.2d 724, 729, 198 Ill.2d 1, 9 (Ill.,2001); and Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr, 124 Ill.2d 435, 447–48, 530 N.E.2d 439 (Ill. 1988).

In this case, there is a dispute as to whether the arbitration clause should apply and thus, the case law requires that this matter be referred for dispute resolution pursuant to Section 28 of the Professional Services Agreement.  This matter is stayed, with a status date of September 21, 2022 at 9:00 am in Room A117.  The status date of February 22, 2022 is stricken. Clerk to notify via email.

_3/21/22_
Date

Hon. Bobbi N. Petrungaro

Exhibit B

PRESENCE CENTRAL AND SUBURBAN
HOSPITALS NETWORK F/K/A PRESENCE
HOSPITALS PRV F/K/A PROVENA
HOSPITALS,

        Claimant,

      v.

MIDWEST LEASING OF ILLINOIS, LLC,
JOLIET ONCOLOGY-HEMATOLOGY
ASSOCIATES, LTD AND SARODE K.
PUNDALEEKA,

        Respondents.

Claim No. 7146

Arbitrator Michael Brohman

## ORDER NO. 12

    This matter comes before me on a status hearing regarding the compliance by
Respondents Midwest and Pundaleeka with the additional deposit requirement from Order Nos.
3, 5 and 10, and the attempt by Midwest and Pundaleeka to move the Circuit Court to vacate and/or
clarify the stay of proceedings pertaining to the Third-Party Claim of Midwest and Pundaleeka
filed against JOHA, Kulumani Sivarajan and Paramjit Sidhu in the Circuit Court action. Counsel
for Respondents Midwest and Pundaleeka and counsel for Claimant Presence submitted briefs on
the issue of sanctions available for the failure of either Midwest or Pundaleeka to comply with the
additional deposit requirements from Order Nos. 5 and 10. All parties participated through their
attorneys and were given the opportunity to make oral arguments on the outstanding issues. It is
hereby ordered:

    1.    Counsel for Respondent JOHA reported that the Circuit Court in the underlying
pending cases has stricken the Motion of Midwest and Pundaleeka to vacate and/or clarify the stay
of proceedings pertaining to the Third-Party Claim of Midwest and Pundaleeka filed against

JOHA, Accordingly, there is no just reason that prevents this Arbitrator from ruling on any of the issues currently pending here.

2.     Having previously been presented with a stipulation to dismiss Presence's claims in this arbitration against Respondent JOHA resulting from a settlement of all issues between Presence and JOHA, the Arbitrator has informed the parties that he will issue an Order dismissing JOHA from this case with prejudice upon presentment of a proposed Order.

3.     Through Order No. 3, issued on November 14, 2022, all of the parties, including Midwest/Pundaleeka, were ordered to submit additional deposits of $3,500 to the AHLA by December 1, 2022. This meant $3,500 from Claimant Presence, $3,500 from Respondent JOHA and $3,500 from Respondent Midwest and/or Respondent Pundaleeka.

4.     Through Order No. 5, issued on December 12, 2022, the time period for the parties to submit their additional deposits was extended to an including December 19, 2022.

5.     Through Order No. 10, issued on February 15, 2023, the Arbitrator re-confirmed the December 19, 2022 due date for the payment of the additional deposits, stating: "The parties are reminded of the requirement of Order No. 5 for each party, including Midwest/Dr. Pundaleeka, to deposit an additional $3,500.00 with the American Health Lawyers Association ("AHLA") by on or before December 19, 2022. That Order remains in full force and effect. To be in full compliance with the Order, the parties must also pay any and all late fees imposed by the AHLA."

6.     During multiple telephonic hearings in this case dating back to the hearing on December 12, 2022, the Arbitrator reminded the parties of the additional deposit requirement and advised the parties of the possibility of sanctions, including an order of default, being imposed against any party or parties that did not comply with the additional deposit requirement.

7.     Claimant Presence and Respondent JOHA have complied with the additional deposit requirements of Order Nos. 3, 5 and 10. Neither Respondent Midwest nor Respondent Pundaleeka has complied with those Orders.

8.     During the argument regarding available sanctions arising from the failures by each of Respondents Midwest and Pundaleeka to comply with the additional deposit requirements from Order Nos. 3, 5 and 10, counsel for Midwest and Pundaleeka conceded that no bankruptcy has been filed by Midwest and/or Pundaleeka and that Pundaleeka, despite being given several opportunities to do so, had not provided any just cause for his failure to comply with the additional deposit requirement. Counsel for Pundaleeka also conceded that Pundaleeka would likely not pay the additional required deposit even if he were given additional time to do so. In this regard, it is noted that, pursuant to Order No. 3, the additional deposit was initially required to be paid by on or before December 1, 2022, or nearly four (4) months ago, and that Midwest and Pundaleeka have been constantly reminded of the required deposit since that time. Nevertheless, they have continued in their failure and/or refusal to pay the required additional deposit.

9.     In addressing the issue of potential sanctions, counsel for Midwest and Pundaleeka has failed to cite to a single rule of the AHLA that precludes the Arbitrator from issuing a default order against a party who fails to comply with arbitration payment Orders. By contrast, Claimant Presence has cited to AHLA Rules 4.1(a)(3), 4.1(a)(5), 5.3 and 7.6(c) as provisions that give an arbitrator broad discretion to sanction and to take any action or make any decision regarding any party who fails to comply with Orders and/or fails to make required payments. See also *Willick v. Napoli Bern Ripka & Assocs., LLP,* 2018 WL 6443080 at *1-5. Under the AHLA rules, the only exception to this broad discretion of power is where a non-paying party can "prove to the arbitrator's satisfaction that paying the deposit would cause financial hardship."

10.     Certainly, with respect to Respondent Pundaleeka at least, and by Pundaleeka's counsel's own admission, no showing at all has been made by Pundaleeka of any financial hardship being caused to him by his paying the $3,500 additional deposit. Although counsel for Midwest has intimated that Midwest will soon be filing for bankruptcy protection, no such bankruptcy has been filed and Midwest has not submitted any documentary proof that Midwest would suffer financial hardship by paying the $3,500 additional deposit.

11.     Based on the foregoing, this Arbitrator concludes that he has the power to enter broad sanctions against each of Midwest and Pundaleeka for their individual failures to comply with the additional deposit requirements of Order Nos. 3, 5 and 10. The Arbitrator also concludes that one potential sanction against a party for defying payment orders is the entry of a default order. Accordingly, the Arbitrator hereby issues a default order against each of Midwest and Pundaleeka for each of their separate failures, without good cause shown, to comply with the additional deposit requirements of Orders 3, 5 and 10.

12.     A prove-up hearing on the issue of damages due to Presence arising from the defaults of Midwest and/or Pundaleeka is scheduled for 10:00 am on April 5, 2023. Presence shall submit any documents in support of its damages claims by or before March 24, 2023. By or before March 31, 2023, Midwest and/or Pundaleeka may submit any documents in response to Presence's damage claims. The submissions by Midwest and/or Pundaleeka shall be solely limited to the issue of damages and shall not address any issues of liability. The parties should call 866-264-6761 to participate in the prove-up hearing.

Dated: March 13, 2023

Michael B. Brohman, Arbitrator

| | |
|---|---|
| PRESENCE CENTRAL AND SUBURBAN HOSPITALS NETWORK F/K/A PRESENCE HOSPITALS PRV F/K/A PROVENA HOSPITALS, | |
| Claimant, | |
| v. | Claim No. 7146 |
| | Arbitrator Michael Brohman |
| MIDWEST LEASING OF ILLINOIS, LLC, JOLIET ONCOLOGY-HEMATOLOGY ASSOCIATES, LTD AND SARODE K. PUNDALEEKA, | |
| Respondents. | |

## <u>ORDER NO. 13</u>

This matter comes before me on Claimant Presence Central and Suburban Hospitals

Network's Stipulation to Dismiss Demand with Prejudice Against JOHA (the "Stipulation").

Upon my review of the Stipulation, and being fully advised in the premises, it is hereby ordered:

1.      The settlement between Claimant Presence Central and Suburban Hospitals

Network's ("Presence") and Respondent Joliet Oncology-Hematology Associates, Ltd. ("JOHA")

was made in good faith;

2.      Presence's claims against JOHA are dismissed with prejudice;

3.      For the avoidance of doubt, JOHA is dismissed as a party from this arbitration; and

4.      Presence and JOHA shall bear its own costs and attorney's fees, except as set forth

in the Settlement Agreement executed prior to the entry of this Order.

Dated: March 13, 2023

_Michael B. Brohman_
Michael B. Brohman, Arbitrator

Exhibit C

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

NORTHERN DISTRICT OF ILLINOIS

Case number *(if known)* _____    Chapter    **7**

☐ Check if this an
amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | **Midwest Leasing of Illinois, LLC** |
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names and *doing business as* names | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **20-4470950** |

| | | | |
|---|---|---|---|
| 4. | **Debtor's address** | **Principal place of business** | **Mailing address, if different from principal place of business** |
| | | **502 Ambriance Dr.**<br>**Burr Ridge, IL 60527**<br>Number, Street, City, State & ZIP Code | P.O. Box, Number, Street, City, State & ZIP Code |
| | | **Cook**<br>County | **Location of principal assets, if different from principal place of business**<br><br>Number, Street, City, State & ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | |
| 6. | **Type of debtor** | ■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br><br>☐ Partnership (excluding LLP)<br><br>☐ Other. Specify: _____ |

| Debtor | **Midwest Leasing of Illinois, LLC** | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

**7.** **Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes.

    7352

**8.** **Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

■ Chapter 7

☐ Chapter 9

☐ Chapter 11. *Check **all** that apply:*

   ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

   ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

   ☐ A plan is being filed with this petition.

   ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

   ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

   ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9.** **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**
If more than 2 cases, attach a separate list.

■ No.
☐ Yes.

| | District | When | Case number |
|---|---|---|---|
| | District | When | Case number |

Debtor    **Midwest Leasing of Illinois, LLC**                                    Case number (*if known*) _____
Name

| | |
|---|---|
| **10.** **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?** | ■ No<br>☐ Yes. |

List all cases. If more than 1, attach a separate list

Debtor _____    Relationship _____

District _____ When _____ Case number, if known _____

---

**11.** **Why is the case filed in *this district?*** — *Check all that apply:*

■  Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐  A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12.** **Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No
☐ Yes.    Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____

Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes.    Insurance agency _____

Contact name _____

Phone _____

---

### ■ Statistical and administrative information

**13.** **Debtor's estimation of available funds** .    *Check one:*

☐ Funds will be available for distribution to unsecured creditors.

■ After any administrative expenses are paid, no funds will be available to unsecured creditors.

---

**14.** **Estimated number of creditors**

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

---

**15.** **Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

---

**16.** **Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |

---

Debtor    **Midwest Leasing of Illinois, LLC**                                      Case number (*if known*)
          Name

| | | |
|---|---|---|
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

Debtor   **Midwest Leasing of Illinois, LLC**        Case number (*if known*) _____
   Name

**Request for Relief, Declaration, and Signatures**

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **April 4, 2023**
     MM / DD / YYYY

**X** /s/ Sarode Pundaleeka      Sarode Pundaleeka
Signature of authorized representative of debtor   Printed name

Title **Managing Member**

**18. Signature of attorney**

**X** /s/ Lester A. Ottenheimer III     Date **April 4, 2023**
Signature of attorney for debtor         MM / DD / YYYY

**Lester A. Ottenheimer III 3127572**
Printed name

**Ottenheimer Law Group, LLC**
Firm name

**750 Lake Cook Road**
**Suite 290**
**Buffalo Grove, IL 60089**
Number, Street, City, State & ZIP Code

Contact phone **847-520-9400**  Email address **lottenheimer@olawgroup.com**

**3127572 IL**
Bar number and State

**Fill in this information to identify the case:**

Debtor name   **Midwest Leasing of Illinois, LLC**

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF ILLINOIS

Case number (if known) _____

☐ Check if this is an
amended filing

## Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors   12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐ *Schedule H: Codebtors* (Official Form 206H)
☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐ Amended *Schedule*
☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☐ Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **April  4, 2023**          X **/s/ Sarode Pundaleeka**
                                          Signature of individual signing on behalf of debtor

                                          **Sarode Pundaleeka**
                                          Printed name

                                          **Managing Member**
                                          Position or relationship to debtor

**Fill in this information to identify the case:**

Debtor name   **Midwest Leasing of Illinois, LLC**

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF ILLINOIS

Case number (if known)   _____

☐ Check if this is an
amended filing

# Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals                    12/15

| Part 1: | Summary of Assets |
|---|---|

1.  ***Schedule A/B: Assets-Real and Personal Property*** (Official Form 206A/B)

    **1a. Real property:**
    Copy line 88 from *Schedule A/B*...................................................................................................... $     **0.00**

    **1b. Total personal property:**
    Copy line 91A from *Schedule A/B*................................................................................................... $     **1,912,211.80**

    **1c. Total of all property:**
    Copy line 92 from *Schedule A/B*..................................................................................................... $     **1,912,211.80**

| Part 2: | Summary of Liabilities |
|---|---|

2.  ***Schedule D: Creditors Who Have Claims Secured by Property*** (Official Form 206D)
    Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*.................... $     **0.00**

3.  ***Schedule E/F: Creditors Who Have Unsecured Claims*** (Official Form 206E/F)

    **3a. Total claim amounts of priority unsecured claims:**
    Copy the total claims from Part 1 from line 5a of *Schedule E/F*............................................................ $     **0.00**

    **3b. Total amount of claims of nonpriority amount of unsecured claims:**
    Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*............................... +$     **2,943,042.00**

4.  Total liabilities ...................................................................................................
    Lines 2 + 3a + 3b     $     **2,943,042.00**

Software Copyright (c) 1996-2023 Best Case, LLC - www.bestcase.com

**Fill in this information to identify the case:**

Debtor name   **Midwest Leasing of Illinois, LLC**

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF ILLINOIS

Case number (if known)   _____

☐ Check if this is an
amended filing

## Official Form 206A/B

## Schedule A/B: Assets - Real and Personal Property                    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1:**      **Cash and cash equivalents**

1. **Does the debtor have any cash or cash equivalents?**

☐ No.  Go to Part 2.
■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
|---|---|---|---|

3.      **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*
Name of institution (bank or brokerage firm)              Type of account              Last 4 digits of account number

3.1.  **First Midwest Bank**
      **n/k/a Old National**            **Checking**            **4000**            $0.00

4.      **Other cash equivalents** *(Identify all)*

5.      **Total of Part 1.**            $0.00
        Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

**Part 2:**      **Deposits and Prepayments**

6. **Does the debtor have any deposits or prepayments?**

■ No.  Go to Part 3.
☐ Yes Fill in the information below.

**Part 3:**      **Accounts receivable**

10. **Does the debtor have any accounts receivable?**

■ No.  Go to Part 4.
☐ Yes Fill in the information below.

**Part 4:**      **Investments**

13. **Does the debtor own any investments?**

■ No.  Go to Part 5.
☐ Yes Fill in the information below.

Debtor    **Midwest Leasing of Illinois, LLC**                                    Case number *(If known)* _____
          <sub>Name</sub>

---

**Part 5:**    **Inventory, excluding agriculture assets**

18. **Does the debtor own any inventory (excluding agriculture assets)?**

   ■ No.  Go to Part 6.
   ☐ Yes Fill in the information below.

---

**Part 6:**    **Farming and fishing-related assets (other than titled motor vehicles and land)**

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

   ■ No.  Go to Part 7.
   ☐ Yes Fill in the information below.

---

**Part 7:**    **Office furniture, fixtures, and equipment; and collectibles**

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

   ■ No.  Go to Part 8.
   ☐ Yes Fill in the information below.

---

**Part 8:**    **Machinery, equipment, and vehicles**

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

   ■ No.  Go to Part 9.
   ☐ Yes Fill in the information below.

---

**Part 9:**    **Real property**

54. **Does the debtor own or lease any real property?**

   ■ No.  Go to Part 10.
   ☐ Yes Fill in the information below.

---

**Part 10:**    **Intangibles and intellectual property**

59. **Does the debtor have any interests in intangibles or intellectual property?**

   ■ No.  Go to Part 11.
   ☐ Yes Fill in the information below.

---

**Part 11:**    **All other assets**

70. **Does the debtor own any other assets that have not yet been reported on this form?**
    Include all interests in executory contracts and unexpired leases not previously reported on this form.

   ☐ No.  Go to Part 12.
   ■ Yes Fill in the information below.

|  |  | **Current value of debtor's interest** |
|---|---|---|

71.    **Notes receivable**
       Description (include name of obligor)
       **Promissory Note - Sarode K.**        180,000.00    -    _____0.00    =    **$180,000.00**
       **Pundaleeka - Contingent**        <sub>Total face amount</sub>         <sub>doubtful or uncollectible amount</sub>

---

Debtor   **Midwest Leasing of Illinois, LLC**
Name

Case number *(If known)*

| **Promissory Note - Sarode K. Pundaleeka- Contingent** | **49,327.00** - | **0.00** = | |
|---|---|---|---|
| | Total face amount | doubtful or uncollectible amount | **$49,327.00** |

| **Promissory Note - Sarode K. Pundaleeka -Contingent** | **16,442.40** - | **0.00** = | |
|---|---|---|---|
| | Total face amount | doubtful or uncollectible amount | **$16,442.40** |

| **Promissory Note - Sarode K. Pundaleeka - Contingent** | **16,442.40** - | **0.00** = | |
|---|---|---|---|
| | Total face amount | doubtful or uncollectible amount | **$16,442.40** |

| **Promissory Note - Sarode K. Pundaleeka - Contingent** | **65,000.00** - | **0.00** = | |
|---|---|---|---|
| | Total face amount | doubtful or uncollectible amount | **$65,000.00** |

| **Promissory Note - Sarode K. Pundaleeka - Contingent** | **70,000.00** - | **0.00** = | |
|---|---|---|---|
| | Total face amount | doubtful or uncollectible amount | **$70,000.00** |

| **Promissory Note - Sarode K. Pundaleeka -** | **165,000.00** - | **150,000.00** = | |
|---|---|---|---|
| | Total face amount | doubtful or uncollectible amount | **$15,000.00** |

72. **Tax refunds and unused net operating losses (NOLs)**
Description (for example, federal, state, local)

73. **Interests in insurance policies or annuities**

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**
**Midwest Leasing of Illinois, LLC et. al. v. Joliet Oncology-Hematology, et.al.**
**Will Case No: 2018L418**
**3d Dist. Appeal No: 3-22-0133**   **$200,000.00**

| **Nature of claim** | **Converted Rent** |
|---|---|
| **Amount requested** | **$2,000,000.00** |

**Midwest Leasing of Illinois, LLC v. Paramjit Sidhu, et.al.**
**Will County Case No: 19L1046**   **Unknown**

| **Nature of claim** | **Contribution, Fraud, Breach of Fiduciary Duty** |
|---|---|
| **Amount requested** | **$0.00** |

**Midwest Leasing of Illinois, LLC v. Presence**   **$100,000.00**

| **Nature of claim** | **Breach of Lease** |
|---|---|
| **Amount requested** | **$100,000.00** |

**Midwest Leasing of Illinois, LLC v. Kulumani Sivarajan, et. al.**   **$1,200,000.00**

| **Nature of claim** | **Breach of Fiduciary Duty** |
|---|---|
| **Amount requested** | **$1,200,000.00** |

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

76. **Trusts, equitable or future interests in property**

Debtor    **Midwest Leasing of Illinois, LLC**                      Case number *(If known)* _____
        Name

77.    **Other property of any kind not already listed** *Examples:* Season tickets,
       country club membership

78.    **Total of Part 11.**                                                     **$1,912,211.80**

       Add lines 71 through 77. Copy the total to line 90.

79.    **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

       ■ No
       ☐ Yes

Debtor      **Midwest Leasing of Illinois, LLC**                    Case number *(If known)* _____
　　　　　　Name

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $0.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.*........................................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $1,912,211.80 | |
| 91. **Total.** Add lines 80 through 90 for each column | $1,912,211.80 | + 91b.  $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $1,912,211.80 |

**Fill in this information to identify the case:**

Debtor name  **Midwest Leasing of Illinois, LLC**

United States Bankruptcy Court for the:  NORTHERN DISTRICT OF ILLINOIS

Case number (if known)  _____

☐ Check if this is an
   amended filing

Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property          12/15

**Be as complete and accurate as possible.**

**1. Do any creditors have claims secured by debtor's property?**

    ■ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

    ☐ Yes. Fill in all of the information below.

| Fill in this information to identify the case: |
|---|
| Debtor name **Midwest Leasing of Illinois, LLC** |
| United States Bankruptcy Court for the:   NORTHERN DISTRICT OF ILLINOIS |
| Case number (if known) |

☐ Check if this is an
amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:    List All Creditors with PRIORITY Unsecured Claims

1.  **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

☐ No. Go to Part 2.

☐ Yes. Go to line 2.

### Part 2:    List All Creditors with NONPRIORITY Unsecured Claims

3.  **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill
out and attach the Additional Page of Part 2.

| | | Amount of claim |
|---|---|---|
| 3.1 | **Nonpriority creditor's name and mailing address** | **$600,000.00** |
| | Joliet Oncology-Hematology Assoc. | |
| | c/o Barnes & Thornburg, LLC | |
| | 1 N. Wacker Drive, Suite 1400 | |
| | Chicago, IL 60606 | |

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Counterclaim - 18-L-0416**

Last 4 digits of account number _

Is the claim subject to offset? ☐ No  ☐ Yes

| 3.2 | **Nonpriority creditor's name and mailing address** | **$2,343,042.00** |
|---|---|---|
| | Presence Central | |
| | c/o Benesch Friedlander et. al. | |
| | 71 S. Wacker Dr., Suite 1600 | |
| | Chicago, IL 60606 | |

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: **Civil lawsuit - 19 L 1046**

Last 4 digits of account number _

Is the claim subject to offset? ☐ No  ☐ Yes

### Part 3:    List Others to Be Notified About Unsecured Claims

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies,
assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|
| | | |

### Part 4:    Total Amounts of the Priority and Nonpriority Unsecured Claims

5.  Add the amounts of priority and nonpriority unsecured claims.

| | | | Total of claim amounts |
|---|---|---|---|
| 5a. Total claims from Part 1 | 5a. | $ | 0.00 |
| 5b. Total claims from Part 2 | 5b. + | $ | 2,943,042.00 |
| 5c. Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c. | $ | 2,943,042.00 |

**Fill in this information to identify the case:**

Debtor name     **Midwest Leasing of Illinois, LLC**

United States Bankruptcy Court for the:    NORTHERN DISTRICT OF ILLINOIS

Case number (if known)

☐ Check if this is an
    amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.    **Does the debtor have any executory contracts or unexpired leases?**
    ■ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.
    ☐ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal    Property*
    (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| 2.1    State what the contract or lease is for and the nature of the debtor's interest | |
|        State the term remaining | |
|        List the contract number of any government contract | |
| 2.2    State what the contract or lease is for and the nature of the debtor's interest | |
|        State the term remaining | |
|        List the contract number of any government contract | |
| 2.3    State what the contract or lease is for and the nature of the debtor's interest | |
|        State the term remaining | |
|        List the contract number of any government contract | |
| 2.4    State what the contract or lease is for and the nature of the debtor's interest | |
|        State the term remaining | |
|        List the contract number of any government contract | |

**Fill in this information to identify the case:**

Debtor name   **Midwest Leasing of Illinois, LLC**

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF ILLINOIS

Case number (if known)   _____

☐ Check if this is an amended filing

## Official Form 206H
## Schedule H: Your Codebtors                                                12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

■ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

☐ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| | *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|---|
| | **Name** | **Mailing Address** | **Name** | *Check all schedules that apply:* |
| 2.1 | _____ | _____ Street _____ City   State   Zip Code | _____ | ☐ D ☐ E/F ☐ G |
| 2.2 | _____ | _____ Street _____ City   State   Zip Code | _____ | ☐ D ☐ E/F ☐ G |
| 2.3 | _____ | _____ Street _____ City   State   Zip Code | _____ | ☐ D ☐ E/F ☐ G |
| 2.4 | _____ | _____ Street _____ City   State   Zip Code | _____ | ☐ D ☐ E/F ☐ G |

**Fill in this information to identify the case:**

Debtor name   **Midwest Leasing of Illinois, LLC**

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF ILLINOIS

Case number (if known)   _____

☐ Check if this is an amended filing

## Official Form 207
## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy                04/22

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

**Part 1:    Income**

1.  **Gross revenue from business**

    ☐ None.

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|
| **From the beginning of the fiscal year to filing date:**<br>From **1/01/2023** to **Filing Date** | ■ Operating a business<br>☐ Other | $0.00 |
| **For prior year:**<br>From **1/01/2022** to **12/31/2022** | ■ Operating a business<br>☐ Other | $0.00 |
| **For year before that:**<br>From **1/01/2021** to **12/31/2021** | ■ Operating a business<br>☐ Other | $0.00 |

2.  **Non-business revenue**
    Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

    ■ None.

| Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|

**Part 2:    List Certain Transfers Made Before Filing for Bankruptcy**

3.  **Certain payments or transfers to creditors within 90 days before filing this case**
    List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

    ■ None.

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|

4.  **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
    List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed

| Debtor | Midwest Leasing of Illinois, LLC | Case number *(if known)* |
|---|---|---|

or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

■ None.

| Insider's name and address Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|

5. **Repossessions, foreclosures, and returns**
List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

6. **Setoffs**
List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

■ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

**Part 3:**   **Legal Actions or Assignments**

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
List all the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None.

| Case title Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| 7.1. **Midwest Leasing of Illinois, LLC, et. al.** v. **Joliet Oncalogy-Hematology Associates, et.al** 2018L416; 3-22-0133 | Civil | Will County Circuit Court | ☐ Pending ■ On appeal ☐ Concluded |
| 7.2. **Midwest Leasing of Illinois, LLC, et. al.** v. **Paramjit Sidhu, et. al.** 2019L1046 | Civil | Will County Circuit Court | ■ Pending ☐ On appeal ☐ Concluded |
| 7.3. **Joliet Oncology-Hematology Assoc.** v. **Midwest Leasing of Illinois, LLC, et. al.** 2018L416;3-22-0133 | Civil - Counterclaim | Will County  Circuit Court | ☐ Pending ■ On appeal ☐ Concluded |
| 7.4. **Presence Central, et. al.** v. **Midwest Leasing of Illinois, LLC, et. al.** 2019L1046 | Arbitration | Will County Circuit Court | ■ Pending ☐ On appeal ☐ Concluded |

8. **Assignments and receivership**

| Debtor | **Midwest Leasing of Illinois, LLC** | Case number *(if known)* |
|---|---|---|

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

### Part 4:   Certain Gifts and Charitable Contributions

9.  **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

■ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|

### Part 5:   Certain Losses

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

■ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property)*. | Dates of loss | Value of property lost |
|---|---|---|---|

### Part 6:   Certain Payments or Transfers

11. **Payments related to bankruptcy**
    List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None.

| | Who was paid or who received the transfer?<br>Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.1. | **Ottenheimer Law Group, LLC<br>750 Lake Cook Road<br>Suite 290<br>Buffalo Grove, IL 60089** | **Attorney Fees** | **March 14, 2023** | **$7,500.00** |
| | Email or website address<br>**lottenheimer@olawgroup.com** | | | |
| | Who made the payment, if not debtor? | | | |

12. **Self-settled trusts of which the debtor is a beneficiary**
    List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
    Do not include transfers already listed on this statement.

■ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

13. **Transfers not already listed on this statement**
    List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include

| Debtor | **Midwest Leasing of Illinois, LLC** | Case number *(if known)* | |

both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

■ None.

| Who received transfer?<br>Address | Description of property transferred or<br>payments received or debts paid in exchange | Date transfer<br>was made | Total amount or<br>value |
| --- | --- | --- | --- |

| **Part 7:** | **Previous Locations** |

**14. Previous addresses**
List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

■ Does not apply

| Address | Dates of occupancy<br>From-To |
| --- | --- |

| **Part 8:** | **Health Care Bankruptcies** |

**15. Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

■ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services<br>the debtor provides | If debtor provides meals<br>and housing, number of<br>patients in debtor's care |
| --- | --- | --- |

| **Part 9:** | **Personally Identifiable Information** |

**16. Does the debtor collect and retain personally identifiable information of customers?**

■ No.
☐ Yes. State the nature of the information collected and retained.

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

■ No. Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

| **Part 10:** | **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units** |

**18. Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

■ None

| Financial Institution name and<br>Address | Last 4 digits of<br>account number | Type of account or<br>instrument | Date account was<br>closed, sold,<br>moved, or<br>transferred | Last balance<br>before closing or<br>transfer |
| --- | --- | --- | --- | --- |

**19. Safe deposit boxes**
List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

Debtor    **Midwest Leasing of Illinois, LLC**                          Case number *(if known)* _____

■ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Does debtor still have it? |
| --- | --- | --- | --- |

20. **Off-premises storage**
     List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

■ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
| --- | --- | --- | --- |

**Part 11:    Property the Debtor Holds or Controls That the Debtor Does Not Own**

21. **Property held for another**
     List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

■ None

**Part 12:    Details About Environment Information**

For the purpose of Part 12, the following definitions apply:
*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

■ No.
☐ Yes. Provide details below.

| Case title Case number | Court or agency name and address | Nature of the case | Status of case |
| --- | --- | --- | --- |

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

■ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
| --- | --- | --- | --- |

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

■ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
| --- | --- | --- | --- |

**Part 13:    Details About the Debtor's Business or Connections to Any Business**

Debtor    **Midwest Leasing of Illinois, LLC**                                  Case number *(if known)* _____

**25. Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
Include this information even if already listed in the Schedules.

■ None

| Business name address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| | | |

**26. Books, records, and financial statements**
26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Date of service<br>From-To |
|---|---|
| 26a.1.  **Dowell Group, LLP**<br>**675 N. North Court**<br>**Suite 450**<br>**Palatine, IL 60067** | **2010 to current** |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Date of service<br>From-To |
|---|---|
| 26b.1.  **Dowell Group, LLP**<br>**675 N. North Court**<br>**Suite 450**<br>**Palatine, IL 60067** | **2010 to current** |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | If any books of account and records are<br>unavailable, explain why |
|---|---|
| 26c.1.  **Dowell Group, LLP**<br>**675 N. North Court**<br>**Suite 450**<br>**Palatine, IL 60067** | |
| 26c.2.  **Dr. Sarode Pundaleeka** | |
| 26c.3.  **Alexander Loftus** | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

■ None

| Name and address |
|---|

**27. Inventories**
Have any inventories of the debtor's property been taken within 2 years before filing this case?

■ No
☐ Yes. Give the details about the two most recent inventories.

Debtor    **Midwest Leasing of Illinois, LLC**    Case number *(if known)* _____

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
| --- | --- | --- |

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
| --- | --- | --- | --- |
| **Sanjiv Modi** | | **Member** | **20%** |

| Name | Address | Position and nature of any interest | % of interest, if any |
| --- | --- | --- | --- |
| **Kulumani Sivarajan** | | **Member** | **20%** |

| Name | Address | Position and nature of any interest | % of interest, if any |
| --- | --- | --- | --- |
| **Sarode Pundaleeka** | | **Managing Member** | **40%** |

| Name | Address | Position and nature of any interest | % of interest, if any |
| --- | --- | --- | --- |
| **Saoud Loutfi** | | **Member** | **20%** |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

■ No
☐ Yes. Identify below.

30. **Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

■ No
☐ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
| --- | --- | --- | --- |

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

■ No
☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
| --- | --- |

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

■ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
| --- | --- |

Debtor    **Midwest Leasing of Illinois, LLC**

Case number *(if known)*

---

**Part 14:**   Signature and Declaration

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    April  4, 2023

/s/ Sarode Pundaleeka                                    **Sarode Pundaleeka**
Signature of individual signing on behalf of the debtor     Printed name

Position or relationship to debtor    **Managing Member**

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
■ No
☐ Yes

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court
### Northern District of Illinois

In re  **Midwest Leasing of Illinois, LLC**

Debtor(s)

Case No. _____

Chapter  **7**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.  Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| | |
|---|---|
| For legal services, I have agreed to accept | $ 7,500.00 |
| Prior to the filing of this statement I have received | $ 7,500.00 |
| Balance Due | $ 0.00 |

2.  The source of the compensation paid to me was:

 ■ Debtor    ☐ Other (specify):

3.  The source of compensation to be paid to me is:

 ■ Debtor    ☐ Other (specify):

4.  ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

 ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm.  A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

 a.  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
 b.  Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
 c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
 d.  [Other provisions as needed]
   **Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.**

6.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:
   **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.**

---

### CERTIFICATION

   I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

**April  4, 2023**
_____
*Date*

**/s/ Lester A. Ottenheimer III**
_____
**Lester A. Ottenheimer III 3127572**
*Signature of Attorney*
**Ottenheimer Law Group, LLC**
**750 Lake Cook Road**
**Suite 290**
**Buffalo Grove, IL 60089**
**847-520-9400  Fax: 847-520-9410**
**lottenheimer@olawgroup.com**
_____
*Name of law firm*

---

# United States Bankruptcy Court
## Northern District of Illinois

In re   **Midwest Leasing of Illinois, LLC**

Debtor(s)

Case No.

Chapter   **7**

## VERIFICATION OF CREDITOR MATRIX

Number of Creditors:                                    **2**

The above-named Debtor(s) hereby verifies that the list of creditors is true and correct to the best of my (our) knowledge.

Date:   **April  4, 2023**

**/s/ Sarode Pundaleeka**

**Sarode Pundaleeka/Managing Member**
Signer/Title

Joliet Oncology-Hematology Assoc.
c/o Barnes & Thornburg, LLC
1 N. Wacker Drive, Suite 1400
Chicago, IL 60606


Presence Central
c/o Benesch Friedlander et. al.
71 S. Wacker Dr., Suite 1600
Chicago, IL 60606

# United States Bankruptcy Court
## Northern District of Illinois

In re   **Midwest Leasing of Illinois, LLC**

Debtor(s)

Case No.

Chapter   **7**

## CORPORATE OWNERSHIP STATEMENT (RULE 7007.1)

Pursuant to Federal Rule of Bankruptcy Procedure 7007.1 and to enable the Judges to evaluate possible disqualification or recusal, the undersigned counsel for   **Midwest Leasing of Illinois, LLC**   in the above captioned action, certifies that the following is a (are) corporation(s), other than the debtor or a governmental unit, that directly or indirectly own(s) 10% or more of any class of the corporation's(s') equity interests, or states that there are no entities to report under FRBP 7007.1:

■ None [*Check if applicable*]

**April  4, 2023**

Date

**/s/ Lester A. Ottenheimer III**

**Lester A. Ottenheimer III 3127572**

Signature of Attorney or Litigant

Counsel for   **Midwest Leasing of Illinois, LLC**

**Ottenheimer Law Group, LLC**

**750 Lake Cook Road**
**Suite 290**
**Buffalo Grove, IL 60089**
**847-520-9400 Fax:847-520-9410**
**lottenheimer@olawgroup.com**

Exhibit D

| | | |
|---|---|---|
| PRESENCE CENTRAL AND SUBURBAN HOSPITALS NETWORK F/K/A PRESENCE HOSPITALS PRV F/K/A PROVENA HOSPITALS, | ) ) ) ) | Claim No. 7146 |
| Claimant, | ) ) | Arbitrator Michael Brohman |
| v. | ) ) ) | |
| MIDWEST LEASING OF ILLINOIS, LLC, JOLIET ONCOLOGY-HEMATOLOGY, ASSOCIATES, LTD., and SARODE K. PUNDALEEKA, | ) ) ) ) | |
| Respondents. | | |

## **FINAL AWARD**

### **Background**

1.      On March 13, 2023, I entered Order No. 12, in which I issued a default order against each of Respondents Midwest and Pundaleeka "for each of their separate failures, without good cause shown, to comply with the additional deposit requirements of Orders 3, 5, and 10." (Order No. 12 at ¶ 11.)

2.      I then gave Claimant Presence until March 24, 2023, to "submit any documents in support of its damages claims," and Respondents Midwest and/or Pundaleeka until March 31, 2023 to "submit any documents in response to Presence's damages." (Order No. 12 at ¶ 12). I further set this matter for April 5, 2023 at 10:00 A.M. for a "prove-up hearing on the issue of damages due to Presence arising from the defaults of Midwest and/or Pundaleeka." (*Id.*)

3.      On March 24, 2023, Presence submitted (1) its Brief in Support of Requested Arbitration Award, which attached 10 exhibits, (2) the Affidavit of Kevin Larkin, which attached 9 exhibits (Exhibits A–I), and (3) the Affidavit of Christopher J. Letkewicz, Esq., which attached 5 exhibits. (Collectively, "Presence's Damages Submission"). In Presence's Brief, Presence

claimed that it was entitled to an arbitration award of $2,060,395.15, broken down as follows: (1) $2,343,042 representing the "total amount of errant payments received by Midwest," plus (2) $412,760.55 in prejudgment interest plus, (3) $504,592.60 in attorney's fees and costs, minus (4) former Respondent JOHA's settlement payment to Presence of $1,200,000.00.

4. Neither Midwest nor Pundaleeka submitted any documents in response to Presence's damages claims.

5. On April 5, 2023, a telephonic prove-up hearing on the issue of damages was held. Counsel for Presence appeared. Counsel for Midwest/Pundaleeka did not appear. When counsel for Midwest/Pundaleeka had still not appeared after several minutes beyond the beginning of the call, I sent an email to counsel for Midwest/Pundaleeka (and included counsel for Presence on the email), stating: "Counsel for Presence and I are on the conference call. Will anyone representing Midwest/Dr. Pundaleeka be joining us?  If so, please join us now or we will just go ahead and proceed." After several minutes passed and still no one representing Midwest/Pundaleeka joined the call, we proceeded with the prove-up hearing. No one from Midwest/Pundaleeka joined the hearing at any point thereafter. At the prove-up hearing, counsel for Presence made an oral argument in support of Presence's requested arbitration award.

**Damages**

6. Based on that oral argument and the evidence and arguments in Presence's Damages Submission, and for the reasons set forth below, I hereby award, in full and final resolution all of the remaining issues submitted for determination, the following itemized award.

*Presence's Unjust Enrichment Claim*

7. In Presence's Demand, Presence asserts an unjust enrichment claim against Midwest and Pundaleeka (the latter of which is based on Pundaleeka being an alter ego of

Midwest). Under Illinois law (the controlling law here), the remedy for unjust enrichment is restitution equaling the value of the benefit the respondent received from the claimant that violates the fundamental principles of justice, equity, and good conscience. *See HPI Health Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145 (1989). Accordingly, where a respondent receives money that justice, equity, and good conscience demands that he return to plaintiff, respondent must return the full amount he unjustly received and refused to return. *See Blus v. Lowrance*, 2018 IL App (1st) 170867-U; *see also Bd. of Ed. of City of Chi. v. Holt*, 41 Ill. App. 3d 625 (1st Dist. 1976); *Norton v. City of Chi.*, 293 Ill. App. 3d 620 (1st Dist. 1997); *Smithberg v. Ill. Mun. Ret. Fund*, 192 Ill. 2d 291 (2000). Based on Presence's Damages Submission, including, in particular, the Affidavit of Kevin Larkin, and Midwest's bank records submitted by Presence, Midwest received $2,343,042.00 in payments between 2015 and 2019 that it was not entitled to keep. Midwest thereafter wrongfully refused to return such payments to Presence. Pundaleeka is jointly and severally liable for the un-returned payments based on evidence that he was the alter-ego of Midwest, that he authorized substantial payments from Midwest to JOHA to effectively make Midwest judgment proof, and that he withdrew substantial funds from Midwest for his own personal benefit and to the detriment of Midwest creditors like Presence. Presence, however, is not entitled to the full $2,343,042.00, because it received a $1,200,000.00 settlement payment from JOHA. Accordingly, Presence is only entitled to **$1,143,042.00** ($2,343,042.00 minus $1,200,000.00) in restitution for its unjust enrichment claim.

*Prejudgment Interest*

8.     Under Illinois law, a party may recover prejudgment interest on an unjust enrichment claim. *See, e.g.*, *Blus*, 2018 IL App (1st) 170867-U; *Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 2015 IL App (1st) 1222725. Accordingly, Presence is entitled to

prejudgment interest. Presence is entitled to the statutory rate of five percent (5%) (815 ILCS 205/2), calculated from September 27, 2019, the date Presence demanded the return of the $2,343,042.00 from Midwest, to the date of this Final Award, April 5, 2023. There is, however, the issue of what should be the "base" amount for calculating prejudgment interest. I conclude that for the September 27, 2019 to December 31, 2022 time frame, prejudgment interest should be based on the full $2,343,000.00, and for December 31, 2022 to April 5, 2023, prejudgment interest should be based on $1,143,042.00, to account for JOHA's December 31, 2022 settlement payment to Presence. Accordingly, Presence is entitled to: (a) $382,268.91 in prejudgment interest from September 27, 2019 to December 31, 2022, and (b) $14,718.62 in prejudgment interest from January 1, 2023 to April 5, 2023, for a total prejudgment interest amount of **$396,987.53**.

*Attorney's Fees, Costs and Arbitration Fees*

9. Under Paragraph 28 of the Professional Services Agreement, the agreement that Midwest and Pundaleeka relied on to compel this arbitration, it provides: "Reasonable costs associated with the resolution of the dispute, including attorneys' fees, may be awarded to the prevailing party in any arbitration." (*See, e.g.*, Claimant's Br. Ex. 7 at ¶ 28.) Presence is clearly the prevailing party here, and the issue becomes what are Presence's "[r]easonable costs … including attorney's fees." Presence asserts that it is entitled to all its attorney's fees and costs from both prior to and after it filed its Demand. I disagree. Under the terms of Paragraph 28, Presence is only entitled to its reasonable costs in connection with the arbitration itself. According to Presence's Damages Submission, Presence states that it incurred $212,038.89 in attorney's fees and $9,777.75 in costs in connection with the arbitration. (*See* Claimant's Br. 9 n.6; Letkewicz Aff. ¶ 11.)

In addition, Presence incurred $3,500 in arbitration fees to make up for the failure of Midwest/Pundaleeka to pay their share of additional arbitration fees that were requested of all parties.

I conclude that these attorney's fees, costs and arbitration fees are eminently reasonable. These attorney's fees, costs and arbitration fees are well documented in the detailed invoices attached to Mr. Letkewicz affidavit, as well as in the AHLA's receipt of the additional arbitration fees that Presence paid on Midwest's/Pundaleeka's behalf. Further, as set forth in Mr. Letkewicz's affidavit, Presence, with exception to the most recent invoice issued on March 6, 2023, has paid all of its prior invoices, which represents the vast majority of the requested attorney's fees and costs amount, and with respect to the unpaid invoice, counsel for Presence anticipates Presence paying that invoice in full because Presence has consistently paid all its counsel's invoices. (Letkewicz Aff. ¶ 11.) Accordingly, I award Presence **$212,038.89** in attorney's fees, **$9,777.75** in costs and **$3,500.00** in arbitration fees.

*Final Calculation*

10.	In sum, I hereby award Presence, in full and final resolution of all of the issues submitted for determination, (a) $1,143,042.00 in unjust enrichment damages, (b) $396,987.53 in prejudgment interest, (c) $212,038.89 in attorney's fees, (d) $9,777.75 in costs, and (e) $3,500.00 in arbitration fees, for a total award of **$1,765,346.17**. In addition, for their failure to timely pay the additional $3,500.00 in arbitration fees on or before their due dates, Midwest and Pundaleeka are directed to pay the AHLA late fees in the sum of $157.50. For the avoidance of doubt, Midwest and Pundaleeka are jointly and severally liable for this award.

Dated: April 5, 2023

Michael B. Brohman, Arbitrator

# Exhibit E

## Presence v. Midwest Arbitration

**Brohman, Michael <MBrohman@ralaw.com>**
Tue 5/2/2023 11:28 AM

To:Letkewicz, Christopher J. <CLetkewicz@beneschlaw.com>;Jenna Milaeger
<jenna@goldberglawoffice.com>;David Eisenberg <david@loftusandeisenberg.com>

📎 2 attachments (45 KB)
image001.emz; Order 14--Final Arbitration Award(19767143_1) (2).DOCX;

Attached you will find the corrected Final Arbitration Award in the above matter. This award should be on the AHLA site soon.

Thank you for the professionalism that all of you exhibited during this matter. Each of you very admirably represented your clients' interests. Good luck as you continue to sift through your remaining issues.

Michael B. Brohman


Shareholder

30 N. LaSalle Street
Suite 2800
Chicago, IL   60602
Direct Phone No.:  312.582.1682
Main Phone No.:  312.580.1200
Fax No.:  312.580.1201
Email: mbrohman@ralaw.com
www.ralaw.com
Roetzel & Andress, A Legal Professional Association

*Both Michael B. Brohman and Roetzel & Andress intend that this message be used exclusively by the addressee(s). This message may contain information that is privileged, confidential and exempt from disclosure under applicable law. Unauthorized disclosure or use of this information is strictly prohibited. If you have received this communication in error, please permanently dispose of the original message and notify Michael B. Brohman immediately at 312.582.1682. Thank you.*